1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   CAROLYN YATES,                    )  Case No.: 1:15-cv-0667-JLT
                                       )
12            Plaintiff,               )  ORDER REMANDING THE ACTION PURSUANT
                                       )  TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13     v.                              )
                                       )  ORDER DIRECTING ENTRY OF JUDGMENT IN
14   CAROLYN W. COLVIN,                )  FAVOR OF PLAINTIFF CAROLYN YATES AND
     Acting Commissioner of Social Security, ) AGAINST DEFENDANT CAROLYN COLVIN,
15                                     )  ACTING COMMISSIONER OF SOCIAL
              Defendant.               )  SECURITY
16   _____ )

17          Carolyn Yates asserts she is entitled to supplemental security under Title XVI of the Social

18   Security Act.  Plaintiff argues the administrative law judge erred in evaluating the medical record, and

19   seeks judicial review of the denial of her applications for benefits.  Because the ALJ failed to resolve a

20   conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles*, the

21   matter is **REMANDED** for further proceedings.

22                              <u>**BACKGROUND**</u>

23          Plaintiff filed an application for benefits on June 22, 2015, alleging disability beginning August

24   1, 2003.  (Doc. 9-3 at 11) Her application was denied initially and upon reconsideration.  (*Id.*) Plaintiff

25   requested an administrative hearing and testified before an ALJ, who determined Plaintiff was not

26   disabled and issued an order denying benefits on May 25, 2007.  (*Id.* at 12-17)  The Appeals Council

27   denied review on August 7, 2008.  (*Id.* at 2-4)  Plaintiff filed a request for judicial review of the ALJ's

28   decision, thereby initiating Case No. 1:08-cv-1466-GSA before this Court.  (*See* Doc. 9-10 at 23)

                                            1

1    While Plaintiff's first application was pending before the Appeals Council, she filed a second

2    application for supplemental security income on June 2, 2008.  (Doc. 9-13 at 2-4)  The Social Security

3    Administration denied the application at the initial level on January 23, 2009.  (Doc. 9-10 at 14)

4    Plaintiff then filed a third application on November 18, 2009.  (*Id.* at 50; Doc. 9-13 at 5-11)  Only two

5    days later, the Court found the ALJ erred in evaluating the testimony of lay witnesses, and remanded

6    Plaintiff's first application for further proceedings.  (Doc. 9-10 at 34-38, 43)

7    On December 28, 2009, the Appeals Council vacated the decision of the ALJ.  (Doc. 9-10 at 46)

8    It found this action "render[ed] the subsequent claims duplicate" and directed the ALJ to "associate the

9    claim files and issue a new decision on the associated claims."  (*Id.*)

10    Plaintiff testified at a second administrative hearing on August 26, 2010. (Doc. 9-10 at 50)  The

11    ALJ determined Plaintiff was not disabled as of the date of her initial application and issued an order

12    denying benefits on September 17, 2010.  (*Id.* at 47-59)  Plaintiff requested review of the decision by

13    the Appeals Council, which granted her request on November 23, 2011.  (*Id.* at 67-71)  The Appeals

14    Council noted the ALJ did not evaluate an opinion offered by Dr. Khalifa related to Plaintiff's mental

15    abilities and determined the ALJ's findings related to Plaintiff's mental impairment were insufficient.

16    (*Id.* at 69)  Therefore, the Appeals Council directed the ALJ to obtain additional evidence, "[f]urther

17    evaluate the claimant's mental impairment," and question a vocational expert regarding Plaintiff's

18    limitations.  (*Id.* at 70)

19    On May 8, 2012, Plaintiff testified before an ALJ for the third time.  (Doc. 9-10 at 75)  The ALJ

20    concluded Plaintiff was not disabled and issued an order on June 12, 2012.  (*Id.* at 84)  Plaintiff

21    requested review by the Appeals Council, which again found the ALJ erred in evaluating Plaintiff's

22    impairments and failed to adequately evaluate the opinion of Dr. Khalifa.  (*Id.* at 95-96)  The Appeals

23    Council remanded for further proceedings before a different ALJ.  (*Id.* at 97)

24    Plaintiff testified before a different ALJ on September 18, 2013.  (Doc. 9-9 at 15)  The ALJ

25    concluded Plaintiff "has not been under a disability, as defined in the Social Security Act, since June

26    22, 2015, the date the application was filed."  (*Id.* at 28)  The Appeals Council denied Plaintiff's

27    request for review of the decision on February 28, 2015, at which time the ALJ's determination became

28    the final decision of the Commissioner of Social Security.  (*Id.* at 2-4)

1

### STANDARD OF REVIEW

2

District courts have a limited scope of judicial review for disability claims after a decision by

3

the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

4

such as whether a claimant was disabled, the Court must determine whether the Commissioner's

5

decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

6

ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

7

standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

8

*Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

9

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

10

reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

11

389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole

12

must be considered, because "[t]he court must consider both evidence that supports and evidence that

13

detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

14

### DISABILITY BENEFITS

15

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

16

engage in substantial gainful activity due to a medically determinable physical or mental impairment

17

that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

18

§ 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

19
20
21
22

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

23

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

24

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

25

the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

26

gainful employment.  *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

27

### ADMINISTRATIVE DETERMINATION

28

The Commissioner established a sequential five-step process for evaluating a claimant's

3

1    alleged disability.  20 C.F.R. §§ 404.1520, 416.920(a)-(f).  The process requires the ALJ to determine

2    whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2)

3    had medically determinable severe impairments (3) that met or equaled one of the listed impairments

4    set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual

5    functional capacity to perform to past relevant work or (5) the ability to perform other work existing in

6    significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and

7    objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927.

8    **A.    Relevant Medical Evidence**[1,2]

9         Dr. James Nowlan performed a comprehensive internal medicine evaluation on November 4,

10   2008.  (Doc. 10-1 at 32)  Plaintiff reported she had low back pain, pain in her neck, arthritis in her neck,

11   and diabetes.  (*Id.*)  Dr. Nowlan noted Plaintiff "had an x-ray of her neck with minimal changes," which

12   also showed "metal fragments…from a bullet wound that went through her neck."  (*Id.*)  Plaintiff said

13   the pain in her neck was constant, and increased when "[t]urning her neck side to side."  (*Id.*)  Upon

14   examination, Plaintiff "had slight pain with the range of motion of her knees."  (*Id.* at 34)  Dr. Nowlan

15   determined Plaintiff's "[m]otor strength was 5/5 throughout the bilateral upper and lower extremities,"

16   and she had "[n]ormal" results on the sensory exam.  (*Id.*)  Dr. Nowlan concluded Plaintiff "could stand

17   and walk for six hours in an eight-hour day," and her ability to sit was "unlimited."  (*Id.* at 34-35)  He

18   found no postural or manipulative limitations and believed Plaintiff "could lift 25 pounds frequently

19   and 50 pounds occasionally."  (*Id.* at 35)

20        Dr. Soad Khalifa conducted a consultative psychiatric evaluation on November 16, 2008.

21   (Doc. 10-1 at 36)  Plaintiff told Dr. Khalifa that she suffered from "medical problems and depression."

22   (*Id.*)  Dr. Khalifa noted Plaintiff "describe[d] feeling sad, having nervousness," difficulty sleeping, and

23

24        _____

25        [1] Defendant declined to provide a summary of the relevant medical evidence, instead stating that "[t]he Commissioner submits that the ALJ fairly and adequately summarized the medical and non-relevant evidence in her decision."  (Doc. 18 at 4)  However, the parties are *obligated* to provide "a summary of all relevant medical evidence including an explanation of the significance of clinical and laboratory findings and the purpose and effect of prescribed medication and therapy."  (Doc. 5 at 3)  Defendant's failure to comply with the Court's order is particularly troubling in light of the fact that two of the three issues raised by Plaintiff concern the ALJ's evaluation of the medical record.  (*See* Doc. 15)  Defendant is cautioned that future failure to comply may result in a determination that the Commissioner has waived argument on the relevant issue and may result in monetary sanctions.  *See* Local Rule 110; *Malone v. U.S. Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987) (imposing sanctions for to comply with a court order).

26

27

28        [2] While the Court has reviewed the entirety of Plaintiff's medical records, only opinions relevant to the issues Plaintiff raised in her opening brief and the Court's analysis below are summarized herein.

4

1  "pain all over her body." (*Id.*) She also "express[d] grief over her friend who she lost about a year

2  ago." (*Id.*) Plaintiff said she had "no social activities" and that her family members took care of

3  cleaning and shopping for her. (*Id.* at 37) Dr. Khalifa noted Plaintiff was able to remember three of

4  three items immediately and after "a few minutes." (*Id.*) Dr. Khalifa opined Plaintiff's memory,

5  concentration, persistence, pace, and judgment were "intact." (*Id.* at 38) Dr. Khalifa gave Plaintiff a

6  GAF score of 55.[3] (*Id.* at 38) Dr. Khalifa concluded:

7
8  > She should be able to perform simple and repetitive tasks. She will have difficulty performing detailed and complex tasks because of depressive symptoms, nervousness, limited social skills, neck pain, back pain, and body aches.

9
10  > She will have difficulty accepting instructions from supervisors or interacting with coworkers and the public for the same above reasons. She will have difficulty performing activities on a consistent basis for the same above reasons.

11
12  > She will have difficulty maintaining regular attendance in the workplace or completing [a] normal workday for the same above reasons.

13  > She will have difficulty dealing with stress in competitive work for the same above reasons, depressive symptoms, nervousness, shaking at times, neck pain, back pain, body pain, limited social skills [and] bereaving.

14

15  (*Id.* at 38-39) In addition, because Plaintiff had difficulty with math and calculating "serial 3s" and

16  "serial 7s," Dr. Khalifa opined she would "have difficulty managing her funds." (*Id.*)

17        On January 5, 2009, Dr. Jonathan Nordlicht completed a physical residual functional capacity

18  assessment. (Doc. 10-1 at 40-45) He noted Plaintiff had degenerative joint disease, chronic neck pain,

19  and Chronic Obstructive Pulmonary Disease. (*Id.* at 40) Dr. Nordlict determined Plaintiff did not have

20  any exertional, postural, manipulative, or visual limitations. (*Id.* at 41-43) He opined Plaintiff should

21  "avoid concentrated exposure" to fumes, odors, dusts, gases, and poor ventilation. (*Id.* at 43)

22        Dr. Patrice Solomon completed a psychiatric review technique and mental residual functional

23  capacity assessment on January 20, 2009. (Doc. 10-1 at 46-60) She noted Plaintiff reported she was

24  able to cook, go shopping, or go to doctor appointments. (*Id.* at 56) In addition, Dr. Solomon found

25  that Plaintiff's "mood seems to depend largely upon [her] physical condition," and that "the severity of

26

27      [3] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and
occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association,

28  *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV"). A GAF score of 51-60 indicates
"moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social,
occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.*

the depression [was] not such as seem[ed] to preclude enjoyment of hobbies (radio and television), visiting with family or going out some." (*Id.*) According to Dr. Solomon, Plaintiff's "level of depression itself does not seem sufficient to preclude adaptation to simple work setting," and her work "[a]ttendance would seem to depend on motivation and her physical condition, not the severity of the psych [impairment]." (*Id.*) She found Plaintiff's social skills were "adequate for interaction with supervisors and coworkers [but] perhaps not with the public." (*Id.* at 60) Dr. Solomon concluded Plaintiff had mild restrictions in her activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (*Id.* at 54) She believed Plaintiff was "not significantly limited" with her ability to understand, remember, and carry out very short and simple instructions; she was "moderately limited" with the ability understand, remember, and carry out detailed instructions. (*Id.* at 58) Further, Dr. Solomon determined Plaintiff's "concentration and pace [were] variable, but adequate for continuous 2 hour segments required by simple work routine." (*Id.* at 60)

On June 8, 2013, Dr. Tomas Rios performed a consultative internal medicine evaluation. (Doc. 10-4 at 40) Plaintiff described a "history of arthritis involving her neck to her shoulders, especially on the right side and also to her knees;" "heart palpitation . . . [that] usually occur[ed] when she [was] anxious or stressed out;" diabetes; and asthma. (*Id.* at 40-41) Plaintiff was "independent in activities of daily living" and said she "trie[d] to help with some of the household chores." (*Id.* at 41) Dr. Rios observed that Plaintiff was able to "move[] about in the room without any difficulty" and "was capable of getting on and off the examination table without any difficulty." (*Id.*) He found Plaintiff had "good range of motion" in her neck, but "she describe[d] pain on palpation along the subacromial and upper trapezius region." (*Id.* at 43) In addition, Plaintiff had "good range of motion without any impingement sign" in both shoulders "but describe[d] tenderness along the right subacromial area." (*Id.*) She also showed "tenderness…on the dorsal of both hands" and in her knees "on palpation." (*Id.*) However, her range of motion was good, and her "[f]ine and gross finger manipulation [was] preserved." (*Id.*) Dr. Rios determined Plaintiff's motor strength and grip strength were "5/5." (*Id.*) In the section entitled "Functional Assessment/Medical Source Statement," Dr. Rios indicated Plaintiff had "[n]o limitations" with her sitting, standing, or walking capacity. (*Id.* at 44) Further, he noted:

> Maximum lifting/carrying capacity: 50 pounds occasionally and 25 pounds frequently.
>
> Postural activities:  The claimant is capable of frequent climbing, balancing, stooping, kneeling, crouching and crawling.
>
> Manipulative activities:  On the right arm she can perform occasional reaching and frequent handling, fingering and feeling.  On the left arm and hand she can also perform frequent reaching and push/pull activity and no limitation with handling, fingering and feeling.
>
> Workplace environmental activities:  This claimant should be precluded from working around chemicals, dust, fumes and gases on account of her history of reactive airway disease.

(*Id.* at 44)

Dr. Rios also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)."  (Doc. 10-4 at 45-50)  On the checklist form, he indicated Plaintiff was able to lift up to 20lbs frequently and "20 to 50lbs" occasionally, and carry up to 10lbs frequently and up to 50lbs occasionally.  (*Id.* at 45)  He noted Plaintiff was limited in her ability to lift and carry due to crepitus in her knees, tenderness, and neuropathy.  (*Id.*)  Dr. Rios indicated Plaintiff was able to sit, stand, and walk for one hour each "at one time without interruption;" sit for a total of eight hours in an eight-hour day; stand for six hours total in an eight-hour day; and walk for six hours total in an eight-hour day.  (*Id.* at 46)  Further, Dr. Rios indicated Plaintiff was limited to occasional reaching overhead with both the right and left arms; frequent reaching in all other directions with both arms; and frequent handling, fingering, feeling, pushing, and pulling with her right hand, but constant handling, fingering, and feeling with her left hand.  (*Id.* at 47)  He also indicated Plaintiff could perform all postural activities— including climbing, balancing, stooping, kneeling, crouching, and crawling—on a frequent basis.  (*Id.* at 48)  Finally, due to Plaintiff's "reactive airway disease," Dr. Rios opined Plaintiff could only "occasionally" tolerate exposure to pulmonary irritants such as dust, odors, and fumes.  (*Id.* at 49)

On June 11, 2013, Dr. James Murphy performed a consultative psychiatric evaluation.  (Doc. 10-4 at 53)  Dr. Murphy noted:

> [Plaintiff] reported that she began experiencing symptoms of depression after her boyfriend died in 2008.  Apparently they had been together for approximately four years and were having some type of disagreement and so she had not talked to him in over a week.  One day she opened the newspaper and saw his obituary.  She feels considerable guilt for not having been there for him.  The death was determined to be from natural causes.  Then in 2009 her brother became very ill and ended up in a coma.  The claimant had power of attorney and the[n] after being in a coma for several months the other members of the family wanted her to pull the plug but she was hesitant to act, finally

after two years she made the decision to let him die.  The other family members blame her for making him suffer and continuously berate her about the situation.  Also a very close friend was shot and killed in 2009 as well.  Since that time she reports that she has had difficulty sleeping, her appetite has waned and her energy and interest in life has diminished.  The claimant says she does not go out of the house unless it is absolutely necessary.

(*Id.* at 53-54)  Dr. Murphy observed that it was "curious that she says her depression occurred in 2009 and yet she began being treated in 2007."  (*Id.* at 54)  He noted also that Plaintiff reported she "worked for one year but quit because she did not want to work that hard," and after obtaining a different job, she "quit that job as well."  (*Id.* at 55)  According to Dr. Murphy, Plaintiff's "attention was within normal limits" and her "[c]oncentration was good."  (*Id.* at 55-56)  He found Plaintiff's "[i]ntelligence was considered less than adequate but she was able to recite 10 digits forward and backwards."  (*Id.*)  He concluded Plaintiff's "barriers to… re-entering the workforce [were] her lack of desire to work, her chronic bereavement, and her obesity."  (*Id.* at 57, emphasis omitted)  Dr. Murphy opined Plaintiff was "capable of performing Simple Repetitive Tasks (SRT) on a regular basis but not complex tasks."  (*Id.*, emphasis omitted)

## B.    Relevant Administrative Hearing Testimony[4]

Vocational expert Judith Najarian (the "VE") testified before the administrative law judge on September 19, 2013.  (Doc. 9-9 at 75)  She classified Plaintiff's past relevant work —using the *Dictionary of Occupational Titles*[5]—as cleaner/housekeeping, DOT 323.687-014, and child monitor, DOT 301.677-010  (*Id.* at 76)  The VE reported Plaintiff did not develop any readily transferable skills in these occupations.  (*Id.*)

The ALJ asked the VE to consider a hypothetical "individual of the same age, education, and past work as the claimant, possessing the residual functional capacity to perform medium work."  (Doc. 9-9 at 76-77)  The ALJ stated the person could: "never climb ladders, ropes, or scaffolds. Occasionally climb ramps or stairs.  Frequently stoop, crouch, kneel, or crawl.  Occasional overhead reaching with

---

[4] Plaintiff's testimony and the ALJ's findings regarding the credibility of her subjective complaints were not issues raised in the opening brief.  (*See generally* Doc. 15)  Accordingly, the Court summarizes only the testimony of the vocational expert from the administrative hearing held on September 19, 2013.

[5] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

the bilateral extremities.  Frequent bilateral handling, fingering, and feeling." (*Id.* at 77)  Further, the individual was required to "[a]void concentrated exposure to irritants such as fumes, odors, dust, and gases." (*Id.*)  Finally, the person was "limited to simple, routine, repetitive tasks." (*Id.*)  The VE opined such a person was unable to Plaintiff's past work as a child monitor but could perform the requirements of cleaner/housekeeping.  (*Id.*)  In addition, the VE testified the person could perform work as a linen room attendant, DOT 222.387-030; counter supply worker, DOT 319-.687-010; and carton forming machine operator, DOT 641.685-022.  (*Id.* at 78)

Next, the ALJ asked the VE to consider "all of the same additional limitations as in hypothetical number one, but at the light exertional level." (Doc. 9-9 at 79)  The VE opined the person could perform work as "a deli cutter, deli cutter slicer, or deli worker," DOT 316.684-014; ticket taker, DOT 344.667-010; mail sorter, DOT 209.687-026." (*Id.* at 80)  If this person was also limited to "occasional interaction with the public," the VE explained she would eliminate the deli cutter and ticket taker positions.  (*Id.*)  She reported a limitation to "occasional interaction with co-workers and supervisors" would not preclude the person from working any of the identified positions.

The VE reported that her testimony was consistent with the *Dictionary of Occupational Titles*, and that the jobs identified were a "representative" sampling, rather than an exhaustive list of the vocations that could be performed.  (Doc. 9-9 at 82)

## C.     The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the application date of June 22, 2005.  (Doc. 9-9 at 17)  At step two, the ALJ found Plaintiff's severe impairments included: degenerative joint disease; discogenic and degenerative disorder of the back; chronic obstructive pulmonary disease; diabetes mellitus; inflammatory arthritis; obesity; depressive disorder, not otherwise specified; and bereavement.  (*Id.*)  At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing.  (*Id.* at 18)  Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; frequently stoop, crouch, kneel, or crawl; occasional overhead reach with the bilateral upper extremities; frequently handle, finger, and feel bilaterally; and should avoid concentrated exposure to irritants such as fumes, odors, dust, and gases.  She would be limited to simple routine and repetitive tasks.

(*Id.* at 19)  Based upon this RFC, the ALJ determined Plaintiff was "capable of performing past relevant work as a cleaner/housekeeper." (*Id.* at 26)  In addition, the ALJ found there were other "medium unskilled" occupations that Plaintiff could perform, such as linen room attendant, counter supply worker, and carton forming machine operator. (*Id.* at 27)  Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 27-28)

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ erred in assessing the medical record and "failed to articulate specific and legitimate reasons" for rejecting the opinion of Dr. Khalifa related to her mental impairment. (Doc. 15 at 7, emphasis omitted) In addition, Plaintiff asserts the ALJ "failed to properly evaluate the opinions of Dr. Rios" related to her physical abilities. (*Id.* at 12, emphasis omitted)  Finally, Plaintiff argues the ALJ erred in relying upon the testimony of the vocational expert. (*Id.* at 16)  On the other hand, Defendant argues that "the ALJ's decision was supported by substantial evidence and free from reversible legal error." (Doc. 18 at 14)

A.    **The ALJ's Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see* 20 C.F.R. § 404.1527(c)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. § 404.1527(c)(2).   Thus, the courts apply a hierarchy to the opinions offered by physicians.

A treating physician's opinion is not binding upon the ALJ, and may be rejected whether another physician contradicts it. *Magallanes*, 881 F.2d at 751.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial

evidence in the record." *Id.*, 81 F.3d at 830.  When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").  Here, Plaintiff contends the ALJ erred by rejecting the opinions of Drs. Khalifa and Rios, which were contradicted by other physicians.  Accordingly, to the extent the ALJ rejected any of portion of their opinions, the ALJ was required to set forth specific and legitimate reasons supported by substantial evidence in the record to support the decision.

### 1.      Opinions of Dr. Khalifa and Plaintiff's Mental RFC

Plaintiff contends the ALJ erred by rejecting the statements of Dr. Khalifa indicating Plaintiff "'will have difficulty' in the following work categories: 1) performing detailed and complex tasks; 2) accepting instructions from supervisors or interacting with coworkers and the public; 3) performing activities on a consistent basis; 4) maintaining regular attendance in the work place or completing a normal workday; and 5) dealing with stress in competitive work." (Doc. 15 at 8)  However, as the ALJ observed, Dr. Khalifa did not indicate the extent to which Plaintiff would have "difficulty" with each of these abilities and the opinion.  (*See* Doc. 9-9 at 21; *see also* Doc. 10-1 at 38-39)  Nevertheless, Dr. Khalifa gave Plaintiff a GAF score of 55 (Doc. 10-1. at 38), thereby indicating his belief that Plaintiff had "*moderate* symptoms, (e.g., flat affect and circumstantial speech, occasional panic attacks) OR *moderate* difficulty in social, occupational, or school functioning." (*DSM-IV* at 34, emphasis added). Dr. Khalifa opined that despite these difficulties, Plaintiff "should be able to perform simple and repetitive tasks." (Doc. 10-1 at 38)  This conclusion was adopted by the ALJ in the RFC, which indicated Plaintiff should "be limited to simple routine and repetitive tasks." (Doc. 9-9 at 19)

### a.      *Plaintiff's RFC addressed difficulties identified by Dr. Khalifa*

The Ninth Circuit determined the limitation to unskilled work encompasses a claimant's "moderate mental residual functional capacity limitations." *See, e.g, Thomas v. Barnhart*, 278 F.3d 947, 953, 955 (9th Cir. 2002).  Similarly, the Court concluded a limitation to "simple, routine,

11

repetitive" tasks accommodated physicians' findings that a claimant had "a slow pace" and "several moderate limitations in other mental areas." *Stubbs- Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008); *see also Sabin v. Astrue*, 337 Fed. App'x 617, 620-21 (9th Cir. 2009) (finding the ALJ properly assessed the medical evidence when finding that—despite moderate difficulties as to concentration, persistence, or pace—the claimant could perform simple and repetitive tasks on a consistent basis).

Likewise, a limitation to simple tasks addresses a claimant's limitations with social functioning and adaptation. *See Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed. App'x 15 (9th Cir. 2012) (holding that a residual functional capacity for simple routine tasks, which did not expressly note the claimant's moderate limitations in interacting with others, nonetheless adequately accounted for such limitations); *Langford v. Astrue*, 2008 WL 2073951 at *7 (E.D. Cal. May 14, 2008) ("unskilled work… accommodated [the] need for 'limited contact with others'"); *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 312 (W.D.N.Y. 2013) (finding the ALJ accounted for "significantly delayed adaptive behavior . . . in finding that [the claimant] could perform 'simple, routine, and repetitive tasks'"). As one district court explained, "such limitations with adaptation are not *per se* disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks." *McLain v. Astrue*, 2011 WL 2174895 at *6 (C.D. Cal. June 3, 2011).

Finally, the limitation to simple, repetitive tasks also addresses a claimant's low tolerance for stress. *See, e.g., Keller v. Colvin*, 2014 WL 130493 at *3 (E.D. Cal. Jan. 13, 2014) (finding the ALJ "appropriately captured" the need for "low stress settings" by limiting the claimant to simple tasks, "equating to unskilled work")

### b.    The mental RFC is supported by substantial evidence

As noted above, Dr. Khalifa opined Plaintiff could "perform simple and repetitive tasks." (Doc. 9-9 at 21; Doc. 10-1 at 38)  The ALJ gave "great weight" to this opinion.  (Doc. 9-9 at 21)  Similarly, Dr. Murphy concluded Plaintiff "was able to understand, carry out, and remember simple instructions…[and was] able to perform simple repetitive tasks on a daily basis."  (*Id.*)  The ALJ also gave "great weight to Dr. Murphy's opinion."  (*Id.*)  Importantly, both physicians reached these conclusions after examining Plaintiff.  (*See id.;* Doc. 10-1 at 36; Doc. 10-4 at 53)

When the opinions of a physician "rest[] on independent examination," the opinions constitute

1    substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Orn v.*

2    *Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical

3    findings, such findings are substantial evidence).  Because Drs. Khalifa and Murphy reached their

4    decisions after testing Plaintiff's memory, questioning her to determine her insight and judgment, and

5    observing her concentration for the examination, these opinions are substantial evidence supporting

6    the mental RFC identified by the ALJ.  *See Tonapetyan*, 242 F.3d at 1149; *Orn*, 495 F.3d at 632.

7            2.       Opinions of Dr. Rios and Plaintiff's Physical RFC

8            Plaintiff argues the ALJ erred in evaluating the opinions of Dr. Rios as set forth in his narrative

9    report and the assessment form.  (Doc. 15 at 12-15)  Plaintiff asserts:

10           As the ALJ observes, Dr. Rios set forth different restrictions in his narrative report as
             compared to the medical source statement form that is attached to the narrative report.
11           For instance, in the narrative report, Dr. Rios stated that Carolyn Yates should be
             precluded from working around chemicals, dust, fumes and gases. AR 1151. But in the
12           assessment form, Dr. Rios stated that Carolyn Yates could be exposed to dusts, odors,
             fumes and pulmonary irritants occasionally, i.e., up to 1/3 of the workday. AR 1156
13                   For another example, in the narrative report, Dr. Rios stated that Carolyn Yates
             has no limitation in sitting, standing or walking. AR 1151. But in the assessment form,
14           Dr. Rios limited Carolyn Yates to one hour of sitting, standing or walking at one time
             without interruptions. AR 1153.
15                   For another example, in the narrative report, Dr. Rios limited Carolyn Yates to
             reaching occasionally with the right upper extremity. AR 1151. But in the assessment
16           form, Dr. Rios stated that Carolyn Yates could reach frequently with the right upper
             extremity. AR 1154.

17

18   (*Id.* at 12-13)  The ALJ acknowledged these inconsistences and indicated she gave "greater weight to

19   the Dr. Rios' Medical Source Statement as that is more consistent with his examination."  (Doc. 9-9 at

20   22)  However, Plaintiff notes that despite giving greater weight to the Medical Source Statement, the

21   ALJ did not include the limitation of "no more than one hour of sitting, standing or walking at one

22   time."  (Doc. 15 at 13)  Plaintiff argues the ALJ failed to set for a specific and legitimate reason for

23   rejecting these limitations and, thus, committed "reversible error."  (*Id.* at 15)

24           Notably, an ALJ may reject an opinion if she finds that it is not consistent with the physician's

25   own objective findings, as the ALJ did here.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

26   2008) (an opinion may be rejected when an ALJ finds inconsistencies between a doctor's assessment

27   and his own records); *see also Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir.

28   1999) (explaining internal inconsistencies within a physician's report supports the decision to discount

                                                    13

the opinion of a physician).  Furthermore, the ALJ's decision to reject the limitation that Plaintiff can only sit, stand, or walk for an hour at one time is supported by substantial evidence in the record.  Dr. Nowland also examined Plaintiff and concluded Plaintiff "could stand and walk for six hours in an eight-hour day," and her ability to sit was "unlimited."  (Doc. 10-1 at 34-35)

Both Drs. Rios and Nowlan were examining physicians, and their opinions were entitled to equal weight.  An "ALJ is entitled to choose between differing medical opinions of equal weight. Indeed, that is the ALJ's function." *Williams v. Astrue*, 2010 U.S. Dist. LEXIS 93511, at *16 (N.D. Cal. Sept. 8, 2010) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1042-43 (9th Cir. 1995)).  The ALJ's decision to give greater weight to the opinion of Dr. Nowlan over the opinion of Dr. Rios is supported by substantial evidence in the record. The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion [and] need not prove by a preponderance that the opinion is wrong." 1996 SSR LEXIS 9 at *8 (emphasis added).  Rather, "[i]t need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*

Because the opinion of Dr. Nowlan was based upon his own examination of Plaintiff, it is substantial evidence to support the ALJ's conclusion that Plaintiff did not have the limitations expressed by Dr. Rios with sitting, standing, or walking.  *See Tonapetyan*, 242 F.3d at 1149; *Orn*, 495 F.3d at 632.   Likewise, the opinion of Dr. Nordlicht, that Plaintiff did not have any limitations sitting, standing, or walking (which is consistent with the conclusions of Dr. Nowland and the opinion expressed by Dr. Rios in his narrative report), is also substantial evidence.  *Tonapetyan*, 242 F.3d 1149 (the opinions of non-examining physicians "may constitute substantial evidence when . . . consistent with other independent evidence in the record").  Consequently, the ALJ's decision to omit the sitting and standing opinion in the RFC is supported by substantial evidence in the record.

## C.    Vocational Expert Testimony

To determine whether a claimant retains the ability to perform work, "the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL

1898704 at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy").

The ALJ asked the vocational expert to consider a hypothetical individual who, among other limitations, was limited "[o]ccasional overhead reaching with the bilateral extremities. (Doc. 9-9 at 77) With the limitations identified by the ALJ in mind, the vocational expert responded the person could perform Plaintiff's past work as a cleaner/housekeeper, DOT 323.687-014. (*Id.* at 77) Also, the vocational expert testified the individual could perform work at the medium exertion level as a linen room attendant, DOT 222.387-030; counter supply worker, DOT 319-.687-010; and carton forming machine operator, DOT 641.685-022. (*Id.* at 78) Further, she identified jobs that required light exertion, such as a deli worker, DOT 316.684-014; ticket taker, DOT 344.667-010; mail sorter, DOT 209.687-026. (*Id.* at 79-80) Plaintiff argues the vocational expert's testimony regarding these positions conflicts with the *Dictionary of Occupational Titles* and, as such, "there is no vocational evidence in the record" to support the conclusion that Plaintiff is able to work. (Doc. 15 at 18; *id.* at 16-18)

Pursuant to SSR 00-4p[6], occupational evidence provided by a vocational expert "generally should be consistent with the occupational information supplied by the DOT." *Id.*, 2000 WL 1898704 at *2. When there is a conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert testimony] to support a determination or decision about whether the claimant is disabled." *Id.* Further, SSR 00-4p provides:

> At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the [vocational expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.

*Id.* Accordingly, the Ninth Circuit has determined an ALJ must inquire "whether the testimony conflicts with the *Dictionary of Occupational Titles*," and may only rely upon conflicting expert

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

testimony when "the record contains persuasive evidence to support the deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

### 1.   Whether there is a conflict

The ALJ determined Plaintiff was able to do "occasional overhead reach[ing] with the bilateral upper extremities. (Doc. 9-9 at 19)  Based upon the vocational expert's testimony, the ALJ concluded Plaintiff was "able to perform the requirements of representative medium unskilled…occupations," such as linen room worker, counter supply worker, and carton forming machine operator.  (*Id.* at 27)  The ALJ asserted, "Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."  (*Id.*)  However, as Plaintiff observes, jobs identified by the ALJ require more than occasional reaching.  Specifically, the description of Plaintiff's past relevant work as a cleaner/housekeeper indicates reaching must be done "[f]requently, and the activity "[e]xists from 1/3 to 2/3 of the time."  DOT 323.687-014; 1991 WL 672783.  Likewise, each of the alternative jobs identified by ALJ at step five requires frequent reaching.  *See* DOT 222.387-030, 1991 WL 672098 (linen room attendant); DOT 319.687-010, 1991 WL 672772 (counter supply worker); DOT 641.685-022, 1991 WL 685583 (carton forming machine operator).[7]  In contrast, reaching "occasionally" means the activity is done only "up to 1/3 of the day."  *See* SSR 83-10, 1983 WL 31251, at *6.

Arguing there is no conflict, the Commissioner observes that in *Price v. Astrue*, 473 Fed. App'x. 566, 568-69 (9th Cir. 2012), the Court found no inconsistency between the vocational expert's testimony and the *Dictionary of Occupational Titles.*  (Doc. 18 at 14)  In *Price*, the Ninth Circuit noted, "The vocational expert was well aware of the reaching limitations and upon specific questioning by the ALJ testified they were within the classifications in the Dictionary."  *Id.* at 568.  However, contrary to *Price,* here the ALJ conducted "no specific questioning" regarding Plaintiff's reaching limitations to determine whether a conflict existed.

Previously, this Court determined the testimony of a vocational expert conflicted with the

---

[7] Although the ALJ did not rely upon the alternative jobs identified at the light exertional level, the Court has reviewed the job requirements of those positions as well. Each indicates the position involves frequent reaching.  *See* DOT 316.684-014, 1991 WL 672744 (deli worker); DOT 344.667-010, 1991 WL 672863 (ticket taker); DOT 209.687-026, 1991 WL 671813 (mail sorter).

*Dictionary of Occupational Titles* where the claimant had a "limitation of only 'occasional overhead reaching'" and "the jobs identified... are defined by the DOT as requiring 'frequent' or constant reaching." *Swetalia v. Colvin*, 2015 WL 75132 at*8 (E.D. Cal. Jan. 6, 2015) The Court explained that "overhead reaching is a subset of reaching." *Id.* (quoting *Carpenter v. Colvin*, 2014 WL 4795037, at *8 (E.D. Cal. Sept. 25, 2014)).

Similarly, other courts throughout the Ninth Circuit have determined there is an apparent conflict where the ALJ limits a claimant to "occasional" reaching but a vocational expert testified a worker with the limitation was able to perform work the *Dictionary of Occupational Titles* indicated required constant or frequent reaching. For example, in *Jordan v. Astrue*, the ALJ limited the claimant to "occasional overhead reaching with the right shoulder." *Id.*, 2010 WL 2816234 at *5 (S.D. Cal. May 4, 2010). The vocational expert opined a worker would be able to perform work as a production assembler, production inspector, and garment folder—although the *Dictionary of Occupational Titles* indicated each of these positions required frequent or constant reaching. *Id.* The Southern District court concluded, "Clearly, these reaching designations conflict with a limitation of occasional reaching," and directed the ALJ to determine resolve the issue of the conflict upon remand. *Id.*, *adopted in full by* 2010 WL 2816233 (S.D. Cal., Jul. 16, 2010). Similarly, the Northern District determined there was a conflict where the expert testified "an individual limited to only 'occasional overhead' reaching" could perform the jobs described "as requiring 'frequent' reaching." *Richardson v. Astrue*, 2012 WL 5904733, at *6 (N.D. Cal. Nov. 26, 2012).

Consequently, the Court finds the VE's testimony that Plaintiff could perform the requirements of her past relevant work as cleaner/housekeeping and the alternative positions of linen room attendant, counter supply worker, and carton forming machine operator conflicts with the job descriptions of the *Dictionary of Occupational Titles*, which indicate the positions require reaching on a frequent basis.

### 2.    Whether the record supports the deviation

When there is a conflict between the testimony of a vocational expert and the *Dictionary of Occupational Titles*, the Court may rely upon the testimony only when "the record contains persuasive evidence to support the deviation." *Massachi* , 486 F.3d at 1153. Importantly, there is no indication in

the record that the ALJ was aware of the conflict between Plaintiff's reaching limitations and the

reaching requirements of the jobs as defined by the *Dictionary of Occupational Titles*.  As a result, the

ALJ was unable to resolve the conflict between the two vocational resources, as is required by the

Ninth Circuit.  *See Johnson*, 60 F.3d at 1435; *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)

("in order for the ALJ to rely on a job description in the *Dictionary of Occupational Titles* that fails to

comport with a claimant's noted limitations, the ALJ must definitively explain this deviation").

Because the ALJ did not address the apparent conflict, and the vocational expert did not explain her

reasoning, the record cannot support the deviation.

**D.    Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to

order immediate payment of benefits is within the discretion of the District Court.  *Harman v. Apfel*,

211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative

agency determination, the proper course is to remand to the agency for additional investigation or

explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S.

12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
> (2) there are no outstanding issues that must be resolved before a determination of
> disability can be made, and (3) it is clear from the record that the ALJ would be
> required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed

when no useful purpose would be served by further administrative proceedings, or where the record

was fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ failed to address the apparent conflicts between the vocational expert's testimony

and the *Dictionary of Occupational Titles*.  Based upon the record, the Court is unable to determine

whether Plaintiff is able to perform work existing in significant numbers in the national economy.

Accordingly, a remand for further proceedings is appropriate in this matter.  *See Zavalin,* 778 F.3d at

848 (an ALJ's failure to reconcile apparent conflict was not harmless where the Court "cannot

determine [from the record] whether substantial evidence supports the ALJ's step-five finding"); *see*

*also Dieugenio v. Astrue*, 2010 WL 317269 at *3 (C.D. Cal. Jan. 19, 2010) (holding that where the

1  expert claimed that his testimony was consistent with information in the *Dictionary of Occupational*

2  *Titles* but a review of the descriptions "reveal[ed] a conflict with respect to the jobs identified," failure

3  to address the conflict warranted a remand for further proceedings).

4  ## CONCLUSION AND ORDER

5          For the foregoing reasons, the Court concludes the ALJ erred by failing to address the apparent

6  conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*.

7  Because the ALJ failed to apply the correct legal standards, the testimony of the vocational expert

8  cannot be substantial evidence to support the conclusion that Plaintiff is able to perform work in the

9  national economy. *See Zavalin*, 778. F.3d at 846; *Rawlings v. Astrue*, 318 Fed. Appx. 593, 595 (2009)

10 ("Only after determining whether the vocational expert has deviated from the *Dictionary of*

11 *Occupational Titles* and whether any deviation is reasonable can an ALJ properly rely on the vocational

12 expert's testimony as substantial evidence to support a disability determination.")  Consequently, the

13 ALJ's decision cannot be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.

14         Based upon the foregoing, **IT IS HEREBY ORDERED**:

15     1.      The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further

16             proceedings consistent with this decision; and

17     2.      The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Carolyn

18             Yates, and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social

19             Security.

20

21 IT IS SO ORDERED.

22     Dated:   **September 27, 2016**              **/s/ Jennifer L. Thurston**

23                                         UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28